IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R.J., et al. : CIVIL ACTION
:
v. :
:
PEDRO RIVERA, et al. : NO. 15-5735

**MEMORANDUM**

**Padova, J.**                                                                                                                                                         **August 9, 2016**

Plaintiffs R.J. and J.B., on behalf of their child, X.J., and R.C., on behalf of her child, J.M., bring this action against the Pennsylvania Secretary of Education, the Commonwealth of Pennsylvania, and the Pennsylvania Department of Education ("PDE"), seeking attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The parties have filed Cross-motions for Summary Judgment. For the following reasons, we grant Plaintiffs' Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.

**I. BACKGROUND**

    A.     The IDEA

The IDEA "'protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere.'" D.K. *ex rel.* Stephen K. v. Abington Sch. Dist., 696 F.3d 233, 244 (3d Cir. 2012) (quoting P.P. *ex rel.* Michael P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 735 (3d Cir. 2009)). To that end, the IDEA provides "that all states receiving federal education funding must

provide" free appropriate public education ("FAPE") "for all disabled children."[1]  D.F. *ex rel.* A.C. v. Collingswood Borough Bd. of Educ., 694 F.3d 488, 499 (3d Cir. 2012) (citation omitted).  "[T]o receive federal money under the IDEA, a state must submit a plan of compliance to the Secretary of Education."  Charlene R. v. Solomon Charter Sch., 63 F. Supp. 3d 510, 513 (E.D. Pa. 2014) (citing 20 U.S.C. §§ 1412-1414).  The Secretary of Education, as head of the State Education Agency ("SEA")[2] is then tasked with apportioning those funds to Local Education Agencies ("LEAs").[3]  20 U.S.C. § 1413(a).

An LEA may apply for IDEA funds by "submit[ing] a plan that provides assurances to the [SEA]" that the LEA meets certain IDEA eligibility requirements.  Id.  An LEA provides a FAPE to a special needs student "'by designing and implementing an individualized instructional program set forth in an'" individual education plan ("IEP").[4]  G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 608 (3d Cir. 2015) (quoting P.P. *ex rel.* Michael P., 585 F.3d at 729). Consequently, LEAs are the entities that "actually provid[e] services to children with disabilities," whereas SEAs are "responsible for ensuring that LEAs comply with the mandates of the IDEA in providing educational services to those eligible students."  Charlene R., 63 F.

---

[1] A free appropriate public education is defined, in pertinent part, as "special education and related services that . . . have been provided at public expense, under public supervision and direction and without charge; . . . meet the standards of the State educational agency; . . . and . . . are provided in conformity with the individualized education program."  20 U.S.C. § 1401(9).

[2] A State Education Agency is the state entity or individual "primarily responsible for the State supervision of public elementary schools and secondary schools."  20 U.S.C. § 1401(32).

[3] A Local Education Agency is defined as "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State."  20 U.S.C. § 1401(19)(A).

[4] An individualized education plan is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with [IDEA requirements]."  20 U.S.C. § 1401(14).

2

Supp. 3d at 513 (citing 20 U.S.C. § 1412(a)(11)(A)).  However, an SEA may be required to provide direct services to qualifying students under the IDEA in certain scenarios, including where an SEA determines that an LEA "is unable to establish and maintain" FAPE programs that comply with IDEA requirements.  20 U.S.C. § 1413(g)(1)(C).  In Pennsylvania, charter schools are classified as independent LEAs that "assume the duty to ensure that a FAPE is available to a child with a disability in compliance with IDEA and its implementing regulations." 22 Pa. Code § 711.3(a).

If a qualifying student is denied a FAPE, the "parent may file a due process complaint on behalf of his or her child, with a subsequent hearing held before an administrative hearing officer."  G.L., 802 F.3d at 608 (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)(A); and D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 274 (3d Cir. 2014)); see also 34 C.F.R. § 300.507.  The Office for Dispute Resolution ("ODR") is an independent PDE-funded entity that administers and oversees disputes relating to special education services.  Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 240 n.1 (3d Cir. 2009).  Prevailing parties in the administrative action may bring a civil action to recover attorneys' fees.  20 U.S.C. § 1415(i)(3)(B).  Courts have "'broad discretion'" under the IDEA "'to grant such relief as the court determines is appropriate, including attorneys' fees.'"  G.L., 802 F.3d at 608 (first quoting Bucks Cty. Dep't of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 67 (3d Cir. 2004), then quoting A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 802 (3d Cir. 2007)).  "'The purpose of the fee provision in IDEA is to enable parents . . . of disabled children for whom the statute was enacted to effectuate the rights provided by the statute.'"  D.S. v. Neptune Twp. Bd. of Educ., 264 F. App'x 186, 189 (3d Cir. 2008) (quoting P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 856 (3d Cir. 2006)).

B.   Stipulated Facts

Plaintiffs X.J. and J.M. attended Walter D. Palmer Leadership and Learning Charter School ("Palmer Charter"), an LEA, prior to its closure in December 2014. (Parties' Concise Statement of Stipulated Material Facts ("SMF") ¶¶ 10-11.) Both X.J. and J.M. were denied a FAPE by Palmer Charter. (Id. ¶¶ 14, 41.) The facts relating to each Plaintiff student are as follows.

In March 2015, X.J.'s parent, J.B., filed a due process complaint with ODR against Palmer Charter and PDE, seeking compensatory education from PDE due to Palmer Charter's failure to provide X.J. with a FAPE. (Id. ¶¶ 15-16, Ex. 1a.) In response, PDE sought to be dismissed, arguing that the ODR lacked jurisdiction over it, but the ODR hearing officer denied PDE's Motion to Dismiss. (Id. ¶¶ 19-21, Ex. 7.) Thereafter, in May 2015, after investigating the allegations contained in the due process complaint, PDE issued a fact-finding report stating that Palmer Charter failed to provide X.J. with a FAPE and that, consequently, X.J. was entitled to 572.7 hours of compensatory education. (Id. ¶¶ 23-24, 26, Ex. 10.) On June 10, 2015, PDE officially offered 572.7 hours of compensatory education to Plaintiffs, valued at $40 per hour, for a total of no more than $22,908. (Id. ¶¶ 28-29, Ex. 12.) On June 24, 2015, an ODR hearing officer held a due process hearing to consider the claims against both Palmer Charter and PDE, but Palmer Charter failed to appear. (Id. ¶¶ 30-31, Ex. 13 at 10.) On August 11, 2015, the hearing officer issued a decision in which he concluded that Palmer Charter had violated the IDEA and that, "[d]ue to the closure and insolvency of . . . Palmer . . . [PDE] must provide" 573 hours of compensatory education, which the hearing officer valued at $78.67 per hour, thus requiring PDE to pay up to $45,077.91 to Plaintiffs. (Id. ¶¶ 33-35, 37, Ex. 16 at 19 n.10, 20.)

In May 2015, R.C., J.M.'s parent, filed a due process complaint with ODR against Palmer Charter and PDE, seeking compensatory education from PDE due to Palmer's failure to provide J.M. with a FAPE. (Id. ¶¶ 42-43, Ex. 20a.) PDE sought to be dismissed, alleging that ODR lacked jurisdiction over it. (Id. ¶¶ 46-47, Exs. 22, 25.) The hearing officer denied PDE's Motion to Dismiss, concluding that "PDE must stand in to provide a remedy for IDEA violations committed by a defunct" LEA. (Id. ¶ 50, Ex. 27 at 5.) PDE then investigated Plaintiffs' claims and compiled the results in a fact-finding report, which it sent to Plaintiffs on July 22, 2015. (Id. ¶ 52, Ex. 29.) The report offered 33.75 hours of compensatory education to Plaintiffs. (Id. ¶¶ 52-53, Ex. 29.) On July 29 and August 6, 2015, an ODR hearing officer held a hearing to consider the claims against both Palmer Charter and PDE, but Palmer failed to appear. (Id. ¶¶ 55-56, Exs. 30-31.) During an off-the-record discussion at the July 29 hearing, PDE increased its original settlement offer of 33.75 hours of compensatory education to 916.65 hours. (Id. Ex. 32.) On September 18, 2015, the hearing officer issued a decision concluding that due to Palmer Charter's IDEA violation, J.M. was owed compensatory education and ordering PDE to provide it. (Id. ¶¶ 58-59, Ex. 35.) The hearing officer specified that J.M. was awarded one hour of compensatory education for every hour that Palmer was open and running from the 15th day of the 2013-14 school year to the end of that year, and 4 hours of compensatory education for each day that J.M. attended school from March 1, 2014 to May 31, 2014. (Id. Ex. 35 at 14.) The parties ultimately agreed that PDE owed $105,388.20 to Plaintiffs in compensatory education, pursuant to the ODR hearing officer's decision. (Id. ¶ 61, Ex. 42 at 1.)[5]

---

[5] PDE's Director of the Bureau of Special Education declared that, subsequently, "[o]n April 20, 2016 and again on August 9, 2016, PDE issued letters to R.C. increasing the amount of compensatory education available to J.M., pursuant to the hearing officer's decision." (SMF Ex. 46 ¶ 23.)

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "'genuine'" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 590 (1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "'[A] factual dispute is material only if it might affect the outcome of the suit under governing law.'" In re G-I Holdings, Inc., 755 F.3d 195, 201 (3d Cir. 2014) (quoting Kaucher v. City of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has] cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light

most favorable to . . . the party who oppose[s] summary judgment." Lamont v. N.J., 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)). Summary judgment rules are "no different where there are cross-motions for summary judgment." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).

## IV. DISCUSSION

The legal issue raised in the Cross-Motions for Summary Judgment is whether Plaintiffs are entitled to collect attorneys' fees from PDE. Ordinarily, parties are responsible for their own attorneys' fees pursuant to the "American Rule." P.N., 442 F.3d at 852 (citation omitted). However, the IDEA specifically provides that a "court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). "'[T]he Supreme Court has given a generous formulation to the term prevailing party.'" Raab v. City of Ocean City, N.J., 833 F.3d 286, 292 (3d Cir. 2016) (quoting Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 163 (3d Cir. 2002)). "[A] prevailing party is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" D.F., 694 F.3d at 501 (quoting J.O. *ex rel.* C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 271 (3d Cir. 2002)); see also Buckhannon Bd. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) ("a prevailing party is one who has been awarded some relief by the court"). Accordingly, "'[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" John T. *ex rel.* Paul T. v. Del. Cty. Intermediate Unit, 318 F.3d 545, 555 (3d Cir. 2003) (alteration in original) (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)). Importantly, the parties' material alteration must thus carry a "judicial imprimatur." Maria C. *ex rel.*

Camacho v. Sch. Dist. of Phila., 142 F. App'x 78, 81 (3d Cir. 2005) (quoting Buckhannon Bd., 532 U.S. at 605)).

Here, the parties' dispute centers on whether Plaintiffs are prevailing parties as to PDE.[6] Plaintiffs contend that they attained prevailing party status, and are thus entitled to attorneys' fees from PDE. Conversely, Defendants argue that PDE is not liable for attorneys' fees because Plaintiffs prevailed against only Palmer Charter, not PDE. Defendants further argue that the IDEA simply does not permit an award of attorneys' fees against an SEA.

In R.V. v. Rivera, 220 F. Supp. 3d 588 (E.D. Pa. 2016), the district court addressed a case very similar to the instant case, considering whether a student and his parent could collect attorneys' fees from PDE after the student was denied a FAPE by the now-defunct Palmer Charter School. In R.V., as here, the student's parent filed IDEA due process complaints against both Palmer Charter and PDE, alleging that Palmer had denied the student a FAPE. After prevailing in the administrative hearing, the parent filed a federal complaint seeking attorneys' fees from PDE. PDE argued that it was not a proper party to the due process complaint because Palmer was solely responsible for providing the student with a FAPE. The R.V. court, however, carefully considered the totality of the IDEA, observing that "underpinning the [statute's] structure is the clear mandate that the SEA retains ultimate responsibility for ensuring that all [eligible] children . . . receive [a FAPE]," and concluded that PDE was a proper defendant to a due process complaint under circumstances in which the LEA ceased to exist and could no longer fulfill its FAPE obligations. Id. at 594. The R.V. court also rejected PDE's argument that, as an SEA, PDE's obligations under the IDEA did not extend to attorneys' fees. In that

---

[6] The only facts that are material to the parties' dispute are the undisputed facts set forth in the parties' Concise Statement of Material Facts. Thus, resolution of the parties' dispute is purely a question of law. See Becker v. Mack Trucks, Inc., 281 F.3d 372, 377 (3d Cir. 2002) (citing W. Am. Ins. Co. v. Park, 933 F.2d 1236, 1238 (3d Cir. 1991)).

regard, the court held that where PDE is a defendant to a due process complaint, and the hearing officer issues an order that changes the legal relationship between the plaintiff and PDE, the plaintiff is the prevailing party against PDE, just as the plaintiff could be a prevailing party against an LEA, and that PDE may be liable for the plaintiff's attorneys' fees. Id.

Applying R.V.'s logic here, we similarly conclude that PDE was properly named as a defendant in the due process complaint and may be liable for Plaintiffs' attorneys' fees. As in R.V., Plaintiffs filed suit against both Palmer Charter and PDE, prevailed in the administrative action, and were awarded compensatory education.[7] While PDE argues that Plaintiffs only prevailed against Palmer Charter because only Palmer Charter failed to provide a FAPE, R.V. makes clear that PDE may be held responsible for Palmer Charter's failure to provide a FAPE because it retains the "ultimate responsibility" for ensuring that students receive a FAPE and must step in to provide that education when the LEA is defunct. R.V., 220 F. Supp. 3d at 594. Indeed, in our case, the hearing officer recognized PDE's responsibility in this regard and explicitly ordered PDE to provide Plaintiffs with compensatory education.

Under these circumstances, and consistent with R.V., as long as the hearing officer's order caused a "'material alteration of the legal relationship of the parties,'" Plaintiffs were

---

[7] Because Plaintiffs filed suit against both Palmer Charter and PDE, the instant case is distinguishable from Santino P. v. Pennsylvania Department of Education, Civ. A. No. 16-5230, 2017 WL 2591936 (E.D. Pa. June 15, 2017), on which Defendants rely, and in which the district court held that PDE was not responsible for paying the attorneys' fees that a parent had incurred while successfully litigating an IDEA violation against Palmer Charter. In Santino P., the parent filed a due process complaint solely against Palmer Charter. Id. at *3. Indeed, the district court explicitly stated in Santino P. that "[t]his case is unlike those [such as R.V.] where the Department was in fact a party to the due process proceeding." Id. at *5. Because PDE was a party to the due process proceeding in the instant case, this case is more like R.V. than Santino P.. Accordingly, Santino P. does not dictate a different outcome than we reach here.

prevailing parties against PDE. See John T. *ex rel.* Paul T., 318 F.3d at 555 (quoting Tex. State Teachers, 589 U.S. at 792-93).

Defendants argue that the hearing officer's order did not materially change PDE's relationship with Plaintiffs because it was willing to provide compensatory education to Plaintiffs even before the hearing officer's decision. Defendants point to PDE's fact-finding reports, which, they argue, demonstrate that PDE calculated a compensatory award for Plaintiffs prior to the hearing. However, the mere offer of compensatory education prior to the entry of an ODR order does not absolve PDE of its attorneys' fees obligation under the statute. Under IDEA, "[a]ttorneys' fees may not be awarded if . . . the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(d)(i)(II); see also D.F., 694 F.3d at 501-02 (holding that a party cannot be considered a prevailing party if it is willing to provide the relief sought by the plaintiffs at the time the due process petition is filed). But where, as here, PDE offered to provide compensatory education (see SMF Ex. 10, 29), but limited the hours and value of that education (see id. ¶¶ 29, 37, 53, Exs. 32, 47 at 1), and the hearing officer ordered more hours and/or additional value, it is plain that the hearing officer granted relief "more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i)(III). Accordingly, § 1415(i)(3)(D)(i)(III) simply does not prohibit an award of attorneys' fees here. Rather, the record shows that the hearing officer awarded substantially larger compensatory education awards to Plaintiffs than the amounts initially offered, and thus we conclude that the orders resulted in "'material alteration[s] of the legal relationship[s]'" between Plaintiffs and PDE, thereby rendering Plaintiffs prevailing parties vis-à-vis PDE. See John T. *ex rel.* Paul T., 318 F.3d at 555 (quoting Tex. State Teachers, 589 U.S. at 792-93).

Defendants also argue, however, that irrespective of Plaintiffs' prevailing party status, PDE should not be liable for attorneys' fees because it did not receive adequate notice of its potential liability for attorneys' fees. In making this argument, Defendants contend that the IDEA does not "inform[] states that by accepting IDEA funds they also agree to pay attorney's fees associated with an LEA's violation of the IDEA." (Defs.' Mot. Summ. J. at 15.) Indeed, the IDEA does not explicitly state that an SEA may be liable for attorneys' fees. However, as R.V. observed, IDEA's "fee shifting provision [also] does not differentiate in any way between SEAs and LEAs, but instead creates an entitlement based solely on prevailing party status." R.V., 220 F. Supp. 3d at 595 (citing 20 U.S.C. § 1415(i)(3)(B)(i)(I)). As we have already concluded that the statute permits a plaintiff to prevail against PDE based on PDE's obligation as an SEA to ensure the provision of FAPE for qualifying students, see 20 U.S.C. § 1412(a)(11)(A), we conclude that PDE had sufficient notice that it could also be liable for attorneys' fees as a consequence of Palmer Charter's failure to provide Plaintiffs with a FAPE.[8]

Finally, Defendants set forth a slippery slope argument, claiming that permitting Plaintiffs to collect attorneys' fees against PDE would "open the door for any attorney in search

---

[8] Defendants note that the IDEA prohibits the use of IDEA funds to pay for attorneys' fees, see 34 C.F.R. § 300.517(b)(1), and assert that PDE would therefore have to use state tax revenues to pay Plaintiffs' attorneys' fees. It contends that such a use of tax revenue is inconsistent with public policy in the Commonwealth, which seeks to protect taxpayers from the burden of a charter school's liabilities. See 24 P.S. § 17-1714-A(c) ("Any indebtedness incurred by a charter school in the exercise of the powers specified in this section shall not impose any liability or legal obligation upon a school entity or upon the Commonwealth."); 24 P.S. § 17-1729-A(i) ("In no event shall . . . the Commonwealth be liable for any outstanding liabilities or obligations of the charter school."). At the same time, Defendants concede that "state law would not supersede the IDEA." (Def. Mot. Summ. J. at 11); see Mut. Pharm. Co. v. Bartlett, 133 S. Ct. 2466, 2476-77 (2013) ("When federal law forbids an action that state law requires, the state law is 'without effect.'" (citing Maryland v. Louisiana, 451 U.S. 725, 746 (1981)). Accordingly, given our conclusion that the IDEA permits an award of attorneys' fees against PDE, we do not find Pennsylvania public policy to be pertinent to our analysis.

of a deeper pocket to name an SEA as a party to an administrative matter." (Defs.' Mot. Summ. J. at 13.) However, as aptly stated in R.V.,

> It does not follow . . . that in every instance where an LEA is alleged to have failed to provide a FAPE . . . an SEA may be named in a due process complaint regarding those allegations. Where, as here, there is no other educational agency to which a parent may look to vindicate her child's right to a FAPE because the LEA in which the alleged violations occurred has since ceased to exist, the SEA's obligations as the backstop to the state's IDEA obligations kick in.

220 F. Supp. 3d at 594. Thus, an SEA's responsibility to provide compensatory awards is limited to scenarios involving a defunct LEA, and we reject Defendants' argument that allowing Plaintiffs to collect attorneys' fees from PDE here will lead to a dramatic increase in litigation.

## IV. CONCLUSION

For the foregoing reasons, we conclude that Plaintiffs are prevailing parties against PDE, and that PDE is thereby liable for Plaintiffs' attorneys' fees. We therefore grant Plaintiffs' Motion for Summary Judgment, deny Defendants' Motion for Summary Judgment, and enter judgment as to liability only in favor of Plaintiffs and against Defendants, with the precise amount of attorneys' fees due to be determined in further proceedings. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
John R. Padova, J.